UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALACK REFRIGERATION CO., INC. D/B/A ALACK CULINARY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-756** |
| **THE W.C. ZABEL CO. D/B/A ZABEL'S CULINARY EQUIPMENT & SUPPLIES SUPERSTORES, LEE ZABEL, ROBERT A. ZABEL AND ANDREW L. ZABEL** | **SECTION "C" (2)** |

### ORDER AND REASONS[1]

Before the Court are: (1) Lee Zabel's, Robert A. Zabel's, and Andrew L. Zabel's Motion to Dismiss Under Rule 12(b)(2) for lack of personal jurisdiction (Rec. Doc. 11); (2) The W.C. Zabel Company's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) plaintiff's claims against it for fraud and collusion, tortious interference with a contract, breach of a non-compete covenant, and interest due on an open account (Rec. Doc. 12); (3) Plaintiff's Motion for Partial Summary Judgment on its claim against The W.C. Zabel Company for the balance due on an open account, including interest (Rec. Doc. 28); (4) The W.C. Zabel Company's Motion to Strike Exhibits 1, 2, and 3 to Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 38); and, (5) Plaintiff's Motion for Leave to File an Additional Affidavit of Correctness of Account in Support of Motion for Partial Summary Judgment (Rec. Doc. 39). The motions are before the Court on the briefs and without oral argument. Considering the record, the law, and the submissions of the parties,

IT IS HEREBY ORDERED that Lee Zabel's, Robert A. Zabel's, and Andrew L. Zabel's Motion to Dismiss Under Rule 12(b)(2) for lack of personal jurisdiction (Rec. Doc. 11) is GRANTED, and plaintiff's claims against them are DISMISSED WITHOUT PREJUDICE.

---

[1] Andrew Lombardo, a second year student at Tulane Law School, assisted with the preparation of this order.

IT IS FURTHER ORDERED that The W.C. Zabel Company's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rec. Doc. 12) is GRANTED IN PART as to plaintiff's claim for tortious interference with a contract and, that claim is DISMISSED WITH PREJUDICE.  The motion is DENIED IN PART as to plaintiff's claims for fraud and collusion, breach of a non-compete covenant, and interest due on an open account.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment on its claim against The W.C. Zabel Company for the balance due on an open account, including interest (Rec. Doc. 28), is DENIED.

IT IS FURTHER ORDERED that The W.C. Zabel Company's Motion to Strike Exhibits 1, 2, and 3 to Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 38) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File an Additional Affidavit of Correctness of Account in Support of Motion for Partial Summary Judgment (Rec. Doc. 39) is GRANTED.

## I. Background

Plaintiff, Alack Refrigeration Company, Inc. d/b/a Alack Culinary ("Alack"), sells equipment and provides other services to restaurants.  Alack is incorporated in Louisiana and maintains its principal place of business in Hammond, Louisiana. Rec. Doc. 1.  It has divisions in New Orleans, Louisiana; Sarasota, Florida; and, Cincinnati, Ohio.  Defendant, The W.C. Zabel Company ("Zabel"), also sells restaurant equipment. It is incorporated in Ohio and maintains its principal place of business in Youngstown, Ohio. *Id*.  Defendants, Lee, Robert, and Andrew Zabel are Zabel's owners and shareholders. *Id.*  Lee Zabel is domiciled in Venice, Florida, and Robert and Andrew Zabel are both domiciled in Youngstown, Ohio. *Id.*

On January 7, 2010, Alack and Zabel entered into a licensing agreement under which Alack licensed to Zabel for use in the Youngstown, Ohio geographical area certain trade names, trademarks, service marks, and trade secrets and confidential information related to business models, marketing materials, and color schemes. Rec. Doc. 1-1. Alack's fees under the licensing agreement "were determined by purchases of preferred vendor partners and vendors of the NAFED[2] Buying Group" and were "automatically debited from rebate disbursement of NAFED and preferred vendor and forwarded to" Alack. *Id.* Alack agreed to use Zabel's "[a]ssignment of all Marketing dollars from preferred vendor partners and vendors of the NAFED Buying Group" "to have costs reduced so as to allow [Zabel] to obtain Benefits" of discounts on certain items and access to certain marketing material, documents and software. *Id.* The licensing agreement contained a non-compete clause. *Id.*

Alack filed this suit against Zabel and Lee, Robert and Andrew Zabel in the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana alleging that Zabel and the individual defendants owe it $417,347.75 for restaurant and kitchen equipment and supplies provided to Zabel by Alack, plus $365,589.91 in interest, as of January 22, 2015. *Id.* Alack contends that contractual interest at a rate of 18% per annum continues to accrue daily, and that all of the defendants are "severally and in solido" liable for the debt because Lee, Robert and Andrew Zabel "are individual guarantors of The W.C. Zabel Company open account." *Id.*

Alack filed an amended petition in which it alleged that the defendants owe it $115,000 in fees, plus interest, attorneys' fees and the costs of these proceedings under the licensing agreement. *Id.* Alack alleged that NAFED owed Zabel money, and Alack had "ownership and/or

---

[2] "NAFED" stands for National Association of Food Equipment Dealers, Incorporated. It is a non-profit buying cooperative of food equipment dealers whose members buy products through the cooperative to obtain better prices with volume discounts, rebates and other monetary disbursements that are based on a member's purchases. Rec. Doc. 1-1.

right of possession of the 'funds'" pursuant to the licensing agreement. *Id.* Alack sought a Writ of Sequestration, which was granted, and the funds were placed in the registry of the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana. *Id.*

Alack also filed a second amended petition in which it alleged that the defendants violated the licensing agreement by engaging in a business that directly competed with Alack within seventy-five miles of an Alack location. *Id.* Specifically, Alack alleges that, at the time the licensing agreement was signed and for some time thereafter, Lee Zabel was employed by SRE Culinary Equipment & Supplies Superstore ("SRE"), which is operated by Alack in Sarasota, Florida. *Id.* Alack alleges that Lee Zabel used proprietary and confidential information and trade secrets gained through the licensing agreement and his employment at SRE to operate a competing business, Zabel's South, within seven miles of SRE. *Id.* Also, in the second amended petition, Alack alleges claims for violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1401, *et seq.*, tortious interference with business and conspiracy to tortiously interfere with business, tortious interference with contract, detrimental reliance, unjust enrichment, fraud and collusion, and misappropriation of trade secrets and other confidential and proprietary information.[3] *Id.*

Defendants removed the suit to the United States District Court for the Eastern District of Louisiana alleging diversity subject-matter jurisdiction under 28 U.S.C. §1332.[4] Rec. Doc. 1. Thereafter, the individual defendants, Lee, Robert and Andrew Zabel, filed a motion to dismiss

---

[3] In the second amended complaint, Alack sought a temporary restraining order preventing defendants from violating the non-compete agreement. Rec. Doc. 1-1. On March 9, 2015, the state district court issued the temporary restraining order, which expired on March 19, 2015. *Id.*

[4] Section 1332 provides that this Court has subject-matter jurisdiction over any action that is between citizens of different states where more than $75,000 is in controversy. 28 U.S.C. § 1332. Alack is a citizen of Louisiana, and the defendants are citizens of Ohio and Florida. Rec. Doc. 1. Alack alleges on the face of the complaint that more than $75,000 is in controversy. Rec. Doc. 1-1. Therefore, this court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332.

for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Rec. Doc. 11. Zabel filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which seeks dismissal of Alcak's claims for fraud and collusion, tortious interference with a contract, breach of a non-compete covenant, and interest due on an open account. Rec. Doc. 12. Alack filed a motion for partial summary judgment regarding its claim for balance due on an open account, including interest payments. Rec. Doc. 28. Also, Zabel filed a motion to strike exhibits 1, 2, and 3 to Alack's motion partial summary judgment, and Alack filed a motion to supplement its motion for partial summary judgment with an additional affidavit. Rec. Docs. 38 and 39, respectively.

## II.     Lee, Robert and Andrew Zabel's Motion to Dismiss under Rule 12(b)(2)

### A.     Standard of Review

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant makes a motion under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012). If the court rules on the motion without an evidentiary hearing, it "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 869 (5th Cir. 2000) (quotation omitted). Thus, "the plaintiff need only present a prima facie case of personal jurisdiction to satisfy its burden." *Id.* (citation omitted).

### B.     Law and Analysis

Two requirements must be satisfied before a federal court sitting in diversity can exercise personal jurisdiction over a non-resident defendant. *Pervasive Software,* 688 F.3d at 220. First,

the exercise of personal jurisdiction must satisfy the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *Id.* Second, the forum state's "long-arm statute," which can place additional jurisdictional limitations on courts, must also permit the exercise of personal jurisdiction. *Id.* Because Louisiana's long-arm statute extends the state's jurisdictional reach to the federal constitutional limit, the two requirements merge in this case. *See* La. Rev. Stat. §13:3201(B); *Luv n' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006).

Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper over any non-resident defendant that has "minimum contacts" with the forum state such that "maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." *Int'l. Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotations omitted). Courts have explained that this standard is more difficult to satisfy where the claims at issue do not arise from the defendant's contacts with the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2853, 180 L.Ed.2d 796 (2011). Thus, courts have essentially split *International Shoe*'s "minimum contacts" standard into two sub-standards. *Id.*

Whenever the plaintiff's claims arise out of the non-resident defendant's contacts with the forum state, the case is in the realm of "specific jurisdiction." *Id.* To establish personal jurisdiction in this context, the plaintiff must show that: "(1) there are sufficient (i.e. not 'random, fortuitous or attenuated') pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software,* 688 F.3d at 221 (citations omitted). If the plaintiff clears this bar, the defendant then

has the opportunity to show that maintenance of a suit would be unreasonable or unfair. *Id.* at 221-22.

Where the claims in the suit are unrelated to the defendant's contacts with the forum state, the plaintiff must satisfy a more stringent standard of "general jurisdiction." *See id.* 230-31. In this context, a non-resident defendant is only subject to the court's jurisdiction where it has such "continuous and systematic" contacts with the forum state so as to be "essentially at home" in the state. *Goodyear Dunlop,* 131 S. Ct. at 2581.

A corporate defendant is not "essentially at home" in a forum state simply because it sells products there. *Id.* at 2855-56, 57 n.6 ("Even regularly occurring sales of a product in a state do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Under such a "sprawling view" of jurisdiction, "any substantial manufacturer or seller of goods would be amenable to suit . . . wherever its products are distributed." *Id.* at 2856. Additionally, *purchases* of products are not dispositive in this regard either. *Id.* (citing *Helicópteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

Lee, Andrew and Robert Zabel argue that they are not subject to either specific or general personal jurisdiction in Louisiana. Rec. Doc. 11. They argue that Alack has not alleged any actions by them individually that would give rise to specific jurisdiction in Louisiana, and that their signing a contract with Alack on Zabel's behalf is not sufficient. *Id.* Further, they argue that they have not engaged in continuous or systematic contacts with Louisiana in their individual capacities sufficient to confer general jurisdiction. *Id.* Specifically, they point out that they do not own any businesses in Louisiana, do not have any assets in Louisiana, have never solicited business in Louisiana, do not have any employees in Louisiana, and have never paid taxes in Louisiana. *Id.* They point out that their only connection with Louisiana is that a business that

they own entered into a contract with a Louisiana business. *Id.*  Lee, Andrew and Robert Zabel also contend that requiring them to litigate this case in Louisiana would be unreasonable and unfair due to the "burden and expense of travel." *Id.*

Alack argues that Lee, Andrew and Robert Zabel are individually subject to specific jurisdiction in Louisiana by virtue of the "defendants['] . . . conduct in purchasing millions of dollars in equipment from Alack over a four-year period, execution of a Louisiana licensing agreement with a Louisiana choice of law provision, and extensive email to [Alack] in Louisiana ordering additional purchases and agreeing to pay for its purchases establishing minimum contacts." Rec. Doc. 26.  Essentially, Alack argues that under either specific or general jurisdiction, Lee, Andrew and Robert Zabel have failed to make a compelling case that the exercise of jurisdiction is unreasonable or unfair. *Id.*  Alack contends that Lee, Andrew and Robert Zabel purposefully availed themselves of the benefits of doing business in Louisiana as evidence by their signing the licensing agreement, and the "defendants" purchases from Alack and emails agreeing to pay for those purchases. *Id.*

Alack has not established a prima facie case for the exercise of either specific or general personal jurisdiction over Lee, Andrew and Robert Zabel.  This case arises from the business dealings between Alack and Zabel.  Alack's central asserted grievance is that it sold restaurant equipment on credit to and entered into a licensing agreement with Zabel, and now Alack seeks payment for the restaurant equipment and damages for breach of the licensing agreement. Rec. Doc. 1-1.  Throughout its opposition to defendants' motion to dismiss, Alack confuses Zabel with the individual defendants by using the ambiguous phrase "the Zabel defendants" in an attempt to impute the actions of Zabel, the company, to the individual owners, Lee, Andrew and Robert Zabel. Rec. Doc. 26.  In fact, much of Alack's memorandum addresses Zabel rather than

then individual defendants. *Id.* All of the actions that Alack contends provide the minimum contacts for the exercise of personal jurisdiction against the individual defendants, purchasing equipment from Alack, entering into the licensing agreement with the Louisiana choice-of-law provision, and emailing Alack to make purchases and agreeing to pay for them, were undertaken on behalf of Zabel, not by the individual defendants in their personal capacities. Further, neither Lee, Andrew nor Robert Zabel negotiated or signed the licensing agreement in Louisiana. Alack has not shown any provision of the licensing agreement, or evidence in the emails or purchase orders that obligates Lee, Andrew or Robert Zabel in their individual capacities, as opposed to their official capacities as officers and shareholders of Zabel. *See e.g. Howell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) ("Corporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for the debts of the corporation"). The court may not impute a Zabel's contacts with Louisiana to the individual defendants unless the court disregards the corporate entity. However, Alack has not raised or proved any of the theories that would permit the court to disregard the separateness of Zabel and the individual defendants. Further, all of the actions that Alack alleges that Lee Zabel undertook occurred in Florida, and do not give rise to personal jurisdiction in Louisiana. Because Alack has not established that Lee, Andrew or Robert Zabel, in their individual capacities, had any contacts with Louisiana, this court cannot exercise either specific or general personal jurisdiction over those defendants. Therefore, Lee, Andrew and Robert Zabel's motion to dismiss for lack of personal jurisdiction is GRANTED, and Alack's claims against them are DISMISSED WITHOUT PREJUDICE.

### III.    Zabel's Motion to Dismiss under Rule 12(b)(6)

####    A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). On the other hand, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). If it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* at 498-99 (internal citations omitted).

####    B.    Fraud and Collusion

Complaints alleging fraud must comply with the particularity requirement under Rule 9(b) of the Federal Rules of Civil Procedure. To comply with Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. The

objectives of Rule 9(b) are to ensure a complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir.2009). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 266 (5th Cir.2010) (citation omitted). Rule 9(b) is applied with "bite" and "without apology," but it "ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial." *Grubbs*, 565 F.3d at 185–86, 189.

In the Second Supplemental and Amending Petition, Alack alleges that Zabel committed fraud and collusion as follows:

> Defendants entered into the Licensing Agreement and Lee Zabel gained employment with Alack in a concerted effort to commit fraud upon Alack, and colluded with one another with the intent, by misrepresentations and/or suppression of the truth, to obtain an unjust advantage for them, and cause loss of inconvenience to Alack.

Rec. Doc. 1-1. Zabel argues that this paragraph is insufficient to allege fraud with the particularity required by Rule 9(b). Rec. Doc. 12-1.

Alack argues that its fraud claim is not confined to the one paragraph, but encompasses, by reference, all of the allegations contained in all three of the petitions. Rec. Doc. 27. Alack argues that all of the allegations taken together plead fraud with enough specificity to satisfy Rule 9(b). *Id.*

Alack's fraud claim against Zabel relates to the licensing agreement. Under Louisiana law, pleading a claim for fraud related to a contract requires: "(1) a misrepresentation, suppression, or, omission of true information; (2) the intent to obtain an unjust advantage or to

11

cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must related to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Assocs.*, 798 So.2d 60, 64 (La. 2001). In paragraphs 54 through 64 of the Second Supplemental and Amending Petition, Alack alleges Lee Zabel's employment relationship with it, that it did not know that Lee Zabel was CEO of Zabel until the licensing agreement was signed, the competing business Zabel established thereafter, and that part of the contract was that Zabel would receive confidential information. Rec. Doc. 1-1. These allegations are sufficient to allege fraud under Louisiana law and Rule 9(b). Therefore, Zabel's motion to dismiss Alack's fraud claim is DENIED.

  **C.** **Tortious Interference with a Contract**

In *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1989), the Supreme Court of Louisiana recognized a limited cause of action for tortious interference with contractual relations that pertains "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." Generally, the claim must be made against a corporate officer rather than a corporate entity in order to draw a distinction between tort and contract liability. *Id.*; *Tech. Control Sys., Inc. v. Green*, 809 So.2d 1204, 1209 (La. Ct. App. 2002) (concluding that tortious interference with a contract should not be expanded to include corporate entity defendants).

In its Second Supplemental and Amending Petition, Alack alleges that Lee Zabel caused Zabel to breach the licensing agreement by engaging in a competing business, and that "[a] cause of action lies against [Zabel] and its officers" for tortious interferences with a contract. Rec. Doc. 1-1. Zabel moved to dismiss this claim against it, arguing that the claim does not lie against the corporation itself. Rec. Doc. 12-1. In its opposition memorandum, Alack

acknowledged that its tortious interference with a contract claim is brought against Lee Zabel, not Zable. Rec. Doc. 27. Because the claim cannot be maintained against Zabel, Zabel's motion to dismiss Alack's tortious interference with a contract claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

### D. Breach of a Non-Compete Covenant

The licensing agreement contains a non-compete provision which provides, in pertinent part:

### RESTRICTIVE COVENANTS; NON-COMPETION COVENANTS

> A. The term "Competitor" shall refer to any person, firm, corporation, partnership or other business entity engaged in or about to become engaged in the production, licensing, sale or marketing of any product or service;
>
> > (i) which is similar to or directly competitive with Licensor's proprietary work, computer software, or any product or service of Licensor with which Licensee has been directly concerned through its activities under this Agreement; or
> >
> > (ii) with respect to which the Licensee has acquired Trade Secret/Confidential Information.
>
> B. As a material inducement to Licensor to enter into this Agreement, Licensee acknowledges he shall receive valuable information, benefits and specialized training by Licensor, and therefore covenants and agrees that, for a period of two years following the termination of this Agreement, whether such termination be with or without cause, he shall not enter in a contract or the employ of any competitor, nor (itself) himself engage during that period, directly or indirectly as principal, agent, officer, employee or otherwise, in any such business in competition with **Licensee**, within a 75-mile radius of any area in which Licensor is itself carrying on business at the time of such termination of this Agreement or recruit or attempt to recruit any of Licensor's other employees. . .

Rec. Doc. 1-1. Alack alleges that Zabel violated this provision by operating a business in competition with SRE in Florida. *Id.*

13

Zabel argues that Alack's claim for breach of this non-compete covenant must be dismiss because Zabel did not violate its terms. Rec. Doc. 12-1. Zabel points to the language highlighted above and argues that the non-compete agreement prohibits it from engaging in business that competes with itself, the licensee, not Alack, the licensor. *Id.* In response, Alack argues that the contract obviously contains a typographical error, and the rest of the non-compete provision evidences the intent that Zabel would be prohibited from engaging in a business that competes with Alack. Rec. Doc. 27. Zabel contends that Alack seeks reform of the contract that Alack drafted, and Alack has not pleaded any facts demonstrating that it is entitled to reform of the contract. Rec. Doc. 35.

Louisiana law provides the equitable remedy of contract reformation when "'the instrument recites terms to which neither party agreed.'" *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 274 (5th Cir. 1987) (quoting *Valhi, Inc. v. Zapata Corp.*, 365 So.2d 867, 870 (La. Ct. App. 1978)). The error or mistake must be mutual, and the remedy "lies only to correct mistakes or errors in the written instrument when such instrument, as written, does not express the true contract or agreement of the parties." *Id.* at 274-75 (quotations and citations omitted). The party seeking reformation of the contract must establish mutual error or mistake by clear and convincing proof, and parol evidence is admissible for this purpose. *Id.* at 275 (citations omitted). The "critical period" for analyzing whether a mutual mistake was made "is the period during which the proposed agreement at issue was reduced to writing and reviewed prior to the signing." *Id.* (citations omitted). In determining whether a mutual mistake was made, the court should consider who wrote the agreement, who the parties were, whether the provision at issue was central to the agreement and the efforts undertaken by the parties to review the written

agreement. *Id.* Whether a mutual mistake was made so as to justify reforming the contract is a fact question that must be resolved by reviewing the evidence in the record. *Id.*

In this case, there is no evidence in the record demonstrating whether or not reforming the contract is warranted. Indeed, the question is before the court on a motion to dismiss before any discovery has been conducted. Therefore, Zabel's motion to dismiss Alack's claim that Zabel breached the non-compete clause based on the typographical error in the contract is DENIED.

Zabel also argues that Alack's claim that Zabel breached the non-compete clause should be dismissed because non-compete clauses are void under Louisiana law. Rec. Doc. 12-1. Alack argues that the law Zabel cites is not applicable to businesses dealing on equal footing. Rec. Doc. 27.

Louisiana Revised Statutes § 23:921 voids non-compete agreements unless they fall under a number of exceptions enumerated in the statute. La. R.S. § 23:921. The Supreme Court of Louisiana has held that § 23:921 applies only to employer-employee contracts, and that non-competition and non-solicitation agreements are permitted "between two corporations on equal footing." *La. Smoked Prods., Inc. v. Savoie's Sausage and Food Prods., Inc.*, 696 So.2d 1373 (La. 1997). Zabel and Alack are two corporations on equal footing. Therefore, § 23:921 does not apply, and Zabel's motion to dismiss Alack's claim that Zabel breached the non-compete clause § 23:921 is DENIED.

### E. Interest Due on an Open Account

Zabel argues that Alack's claim for interest due on an open account should be dismissed because there is no evidence that Zabel agreed to pay 18% interest. Rec. Doc. 12-1. Zabel contends that the licensing agreement does not provide for such interest and purports to be the

entire agreement between the parties, thus there is no basis for Alack's assessing 18% interest on an open account. *Id.* Alack argues that the invoices it sent to Zabel regarding the goods Zabel purchased state that such interest would be assessed, and that these invoices created an open account that is separate from the licensing agreement. Rec. Doc. 27. In response, Zabel argues that there is no evidence that it consented to the interest, that the relevant documents were sent to Zabel or that Zabel received the products allegedly sold to it by Alack. Rec. Doc. 35.

Alack filed a motion for summary judgment[5] regarding its open account claim. Rec. Doc. 28. Alack argues that the affidavit of its president confirms the amount due as of January 22, 2015, is $782,931.66, and that interest continues to accrue at the rate of 1.5% per month. Rec. Doc. 28-1 and 28-4 Alack also supports its motion with a list of invoices it sent to Zabel indicating which were paid and which are outstanding. Rec. Doc. 28-5. Zabel opposes the motion arguing that there is no agreement between Alack and Zabel for payment in accordance with the terms and conditions set out on the invoices, and there is a genuine dispute as to the amount Zabel owed related to the purchases. Rec. Doc. 41. Zabel also points out that some of the invoices were sent to Zabel by SRE, which is not a party to this case, and that Alack has failed to credit its account with rebates from NAFED, which would reduce any amount Zabel may owe. *Id.* Further, Zabel argues that there is no evidence that it agreed to the 18% interest

---

[5] The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is material if its resolution could affect the outcome of the action, and a genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 2510, 91 L.Ed.2d 202 (1986); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408-09 (5th Cir. 2002). When considering a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009). Summary Judgment cannot be defeated by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

because the invoices are not signed, and that the interest is usurious, and thus forfeited under Louisiana law. *Id.*

The arguments made by Zabel seeking to dismiss Alack's claim for interest on the open account claim, and Alack's motion for partial summary judgment regarding the open account claim are fact-intensive inquiries. Because the parties have not engaged in discovery, both motions are DENIED as premature.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED that Lee Zabel's, Robert A. Zabel's, and Andrew L. Zabel's Motion to Dismiss Under Rule 12(b)(2) for lack of personal jurisdiction (Rec. Doc. 11) is GRANTED, and plaintiff's claims against them are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that The W.C. Zabel Company's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rec. Doc. 12) is GRANTED IN PART as to plaintiff's claim for tortious interference with a contract and, that claim is DISMISSED WITH PREJUDICE. The motion is DENIED IN PART as to plaintiff's claims for fraud and collusion, breach of a non-compete covenant, and interest due on an open account.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment on its claim against The W.C. Zabel Company for the balance due on an open account, including interest (Rec. Doc. 28), is DENIED.

IT IS FURTHER ORDERED that The W.C. Zabel Company's Motion to Strike Exhibits 1, 2, and 3 to Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 38) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File an Additional Affidavit of Correctness of Account in Support of Motion for Partial Summary Judgment (Rec. Doc. 39) is GRANTED.

New Orleans, Louisiana, this 7th day of December, 2015.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE